IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOU TYLER, | No. 2:14-CV-0394-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 15).

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 30, 2011. In the application, plaintiff claims that disability began on August 11, 2011. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on November 15, 2012, before Administrative Law Judge ("ALJ") Peter F. Belli. In a November 29, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine, degenerative changes of the thoracic spine, arthritic changes of the right knee, fibromyalgia, and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work except: she could lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; she could sit for 8 hours in an 8-hour workday, with normal breaks, but she requires an option to alternate sitting and standing such that she could sit for 30 to 40 minutes at a time when she is not permitted to leave the workstation; she could stand and walk for 6 hours in an 8-hour workday, with no prolonged walking more than 30 to 40 minutes before she must change positions; she is unable to climb ladders, ropes, and scaffolds; she could occasionally stoop, crouch, crawl, and kneel;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing her past relevant work as an outside deliverer; additionally, there are other jobs in the national economy the claimant can perform.

After the Appeals Council declined review on November 12, 2013, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) plaintiff's residual functional capacity – as determined by the ALJ – precludes past relevant work; and (2) the ALJ failed to articulate sufficient reasons for finding her testimony not credible.

**A.     Past Relevant Work**

As to past relevant work, the ALJ stated:

> The claimant has past work as a home attendant (DOT 354.377-014, SVP 3, medium exertion); a medical patients transport (DOT 355.377-014, SVP 2, medium exertion); a fast food worker (DOT 311.472-010, SVP 2, light exertion); a fast food manager (DOT 185.137-010, SVP 5, light exertion); a store laborer (DOT 922.786-058, SVP 2, medium exertion); a bartender (DOT 312.474-010, SVP 3, light exertion); and an outside deliverer (DOT 230.663.010, SVP 2, light exertion).

///

> This work constitutes past relevant work because it satisfies three requirements. 20 C.F.R. 401.1560(b)(1). First, the claimant stated that she performed this work within the past fifteen years. (Ex. B2E). Second, the claimant listed dates of employment that show that she performed this work for a duration long enough to learn the job duties. (Ex. B2E). Finally, earnings records show that the claimant performed this work at the substantial gainful activity level. (Ex. B5D).
>
> At hearing, the undersigned asked the vocational expert whether the claimant could perform any past relevant work, given her residual functional capacity as described in Finding 5. With such limitations, the vocational expert testified that the claimant could perform past relevant work as an outside deliverer.

Plaintiff argues:

> In assessing the residual functional capacity the ALJ determined that Mary Lou Tyler has the residual functional capacity for a reduced range of light work limited, in relative part, by certain non-exertional restrictions. AR 22, ¶ 5. The non-exertional restrictions found by the ALJ do not allow for the performance of the past relevant work and/or the occupations identified by the vocational expert and relief or by the ALJ. They are not performable because the testimony of the vocational expert conflicts with the DOT. *Massachi v. Astrue*, 486 F3d 1149 (9th Cir. 2007). In order to deviate from the recognized primacy of the DOT the ALJ must elicit a reasonable explanation for the conflict that exists between the DOT and the vocational expert.

In particular, plaintiff argues that the vocational expert's testimony deviated from the Dictionary of Occupational Titles ("DOT") with respect to the sit/stand limitations identified by the ALJ because the DOT is silent on such a restriction. According to plaintiff: "[W]here an expert opines on an issue about which the DOT is silent, a conflict exists." Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony without resolving this conflict.

In support of her argument, plaintiff cites cases from the Northern District of California. See <u>Valenzuela v. Astrue</u>, 2009 WL 1537876 (N.D. Cal. 2009) (holding that a vocational expert's testimony that certain positions would accommodate a sit/stand option was <u>potentially</u> in conflict with the DOT and warranted further inquiry upon remand) (emphasis added); <u>Smith v. Astrue</u>, 2010 WL 5776060 (N.D. Cal 2010). Decisions from the Northern District of California are not binding on this court. The undersigned is persuaded by authority from this court concluding that a sit/stand option does not necessarily conflict with the DOT and

4

noting that the Ninth Circuit has not addressed the issue. See e.g. Gilmour v. Colvin, 2014 WL 3749458 (E.D. Cal. 2014). This holding is consistent with opinions from other courts. See e.g. Overman v. Astrue, 546 F.3d 456 (7th Cir. 2008); Sandborn v. Colvin, 2014 WL 3900878 at (E.D. Pa. 2014).

### B. Credibility Finding

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

    The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

    As to plaintiff's testimony, the ALJ stated:

> The claimant alleges that she stopped working on August 11, 2011, due to intense back pain and numbness; she has migraines every day that can last for two to three hours at a time; she continues to take pain medication, the side effects of which cause drowsiness; she uses a cane; she uses a back brace for support; she has difficulty dressing herself; she no longer cooks; she is unable to vacuum; she needs help when she goes grocery shopping; the pain disturbs her sleep; she has difficulty lifting more than four pounds; and she is unable to stand and sit for long periods.  (Testimony, Disability Report).

The ALJ also considered third-party statements:

> The record contains third party statements from the claimant's sister and caregiver that state that the claimant is unable to sit and stand for long periods; she has difficulty lifting; she needs help with house hold cleaning, personal hygiene, running errands, and cooking; she is generally inactive; she has difficulty bending to feed her cats; she needs help showering on occasion she refuses to go on extended car rides; and her pain is worsening.  (Ex. B6E, B12E).

/ / /

/ / /

In evaluating plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, these statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment for the following reasons:
>
> First, these allegations are seriously disproportionate to the mild radiographic findings. For example, August 29, 2011, radiographs of the right knee revealed only "[v]ery early" arthritic changes. (Ex. B1F/20). August 30, 2011, radiographs of the lumbar spine revealed a "[s]mall" disc protrusion. (Ex. B4F/20). October 3, 2011, radiographs of the thoracic spine revealed "[m]inimal" degenerative changes. (Ex. B4F/19).
>
> Second, these allegations are inconsistent with clinical indications that show that the claimant's condition is well controlled. Physical examinations have revealed intact sensation, intact strength, and no gait abnormality. (Ex. 4F/9, 13; B5F/3). While the claimant was referred to a neurosurgeon on September 12, 2011, the record documents no follow through. (Ex. B14F/3). While obese, the record documents show no related care other than conservative suggestions that she diet and exercise. (Ex. B15F/3, 4).
>
> Third, these allegations are inconsistent with medical opinions that show that the claimant has considerable work-related abilities despite her impairments. Reviewing physician Jerry Reed, M.D., wrote a September 19, 2011, opinion and stated that even with her impairments, the claimant could perform light exertional work involving occasional postural activities. (Ex. B2F). Reviewing physician Steven Higgins, M.D., agreed. (Ex. B6F).
>
> &ast; &ast; &ast;
>
> The claimant's allegations are partially supported by her use of prescription medication; her elevated body weight; and some physical examination findings for muscle tenderness and decreased range of motion.
>
> However, the weight of the evidence shows that, while the claimant may experience some level of pain and fatigue, it is so well controlled such that she could nonetheless perform a wide range of light exertional work.
>
> The claimant's allegations, and the allegations of her sister and caregiver, are not entirely credible.

/ / /

/ / /

Plaintiff argues: "The ALJ rejects Ms. Tyler's testimony based on the belief that the testimony is not fully credible because that testimony is inconsistent with what the ALJ believes it should be." Plaintiff adds: "It also appears that the ALJ is . . . rejecting Ms. Tyler's testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence" and "[s]uch rationale is legally insufficient." Plaintiff also argues that the ALJ improperly relied on daily activities.

In addition to the reasons cited by plaintiff, the ALJ also noted that plaintiff's conditions are controlled with minimal medications – a reason plaintiff ignores in her brief. The ALJ properly cited this as a reason to discount her testimony. See Matthews v. Shalala 10 F.3d 678 (9th Cir, 1993).

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 15) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 16, 2016

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE